Case number 20-1048, Produce Pay Inc v. Spiech Farms LLC. Oral argument not to exceed 15 minutes per side. Mr. Jordan for the appellant. Mr. Jordan, you're mute. You need to unmute. Yes, ma'am. I'm sorry, Your Honor. My name is Albert Jordan and I'm counsel for Appellant Produce Pay. Produce Pay here seeks monies found by the lower courts to be part of Spiech Farms bankruptcy estate. The issue is whether the monies are exempt from the estate because Produce Pay's right is based in the language of the Bankruptcy Codes Section 541D on an equitable interest in the funds. Produce Pay claims such an equitable interest because the federal agricultural Perishable Agricultural Commodities Act, known as PACA, provides one. By the terms of PACA, there is a trust in the proceeds of sale of perishable commodity transactions and that trust secures payment to unpaid sellers and suppliers. Produce Pay claims the rights of an unpaid seller or supplier in the monies that are proceeds of PACA protected sales. The undisputed facts in the record below that support this claim are a 2017 Produce Pay master contract with Spiech called a distribution agreement. This specifies a formula for figuring the amount of Produce Pay rights and it also allocates the claim that supplies the basis for Produce Pay being in court. In addition, Mr. Jordan, let me just ask you in your brief you argue that the bankruptcy court erred by considering the UCC because it stands as an obstacle created by the act. Judge Donald, I think the simplest way to say it is that Delaware's version of the UCC says that when Spiech sold its produce to buyers like Kroger that when it even though it didn't have the money when it delivered the product that the UCC says that it only has a security interest. PACA says to the contrary, PACA says that Spiech has a trust interest, a beneficial trust interest that is frankly more significant and it plays into the language of the statutes that I cited for you in my opening statement and in fact I think some of the cases that we cited in our briefs show that PACA was adopted in the in the mid-1980s to restore a doctrine that treated before the UCC the interest of the seller as a trust-like interest and of course PACA has its own terms. But counsel, PACA as you say is designed to make sure that the seller of blueberries or whatever is going to get paid even though the blueberries you know may may rot down the road but here they did get paid right they got the money from the purchaser the person who gets the blueberries in hand and now you want to get your hooks on that money right it's not the poor it's not that the poor seller the the real seller I understand you have you have a sort of legal constructs but isn't the the things that you just raised are a way to make sure that the farmer who grows the blueberries gets paid not necessarily the person who provides the financing. Well that's really where produce pay comes in in fact they play right into the policies of the statute Judge Boggs actually produce pay is in fact providing money to the seller here and in return getting an assignment of the rights of the seller. That sounds like a bank isn't that what happens it's like you get a lien. It's it's conceivable that it could be but the statute provides for there to be a trust and and the kinds of things that are concerning to the commerce in these goods are the the the lenders that I would refer to as downstream. They're impairing the I'm sorry to interrupt you counsel what's your best argument for why you qualify as a seller your best textual argument? Best textual argument is based on the fact that the right of the seller is a trust right and the trust right is assignable. So as Judge Boggs said it's really a legal construct argument it's not a pure textual argument is that fair? It's it's perhaps Judge Sipar I don't I don't mean to evade the question I'm just in terms of understanding what a trust does and what it normally provides for yes there is some additional fact that bears on whether we have the rights of an unpaid seller or supplier. Counsel help me here I thought the way I read your argument is that you had two arguments one of them is that because of your financing arrangement we'll call it you really are a seller because you have this business where you know you get certain rights your second argument is that they have speech has the PACA rights but they have assigned them to you am I wrong? I thought you had those two distinct you're absolutely right Judge Boggs okay the the the argument is based fundamentally on a distribution agreement that assigns that involves essentially the creation of a consignment arrangement between speech and produce pay and and and as a result of that arrangement the parties have got transaction documents that are in the record that show that there is a transfer of rights if you will and a confirmation of those rights and furthermore not only just a confirmation but a confirmation that that PACA controls and that's undisputed in the record and furthermore there is of course an advance of money by produce pay which is the kind thing that creates the equity if you will that a trust would be due to honor and and and last but not least in the distribution agreement it says that produce pay gets all right title and interest of speech so we're not sure what there's left for for speech to get in in the worst sense of the word in these circumstances speech is sort of double dipping here they they got paid by the retail buyers that they delivered the blueberries to and they got that money and they also got produce place money and in the in the scheme of a of a statute that's intended to establish some equity they can't really say to have that and that's why isn't that what happens in bankruptcy all the time people end up with money from different sources and they as my prof used to say wasted in riots is living they don't have the money and then people like judge donald in her earlier sure sure it happens all the time only we're dealing with a federal statute that says that essentially that the bankruptcy code itself accommodates insofar as there's an equitable interest created and what's in the bankruptcy estate is merely something that's held by a legal title and so what we're saying of course is that we have the equitable interest that is exempted from the the bankruptcy estate and that's why we made our claim and that's why we think that our our claim is consistent with the equity due a holder of PACA beneficiary rights I think there is common ground in this case based on my reading of the red based on my reading of the red brief that the trustee concedes that the claimant that maybe not previously have been a seller supplier may step into the shoes of a seller or supplier and then the question would be did we did these documents put us in that position and we think the answer to that is is plainly yes you know what so you say you say that produce pay is the type of quote seller that congress intended to benefit from this pack of trust and if that is your belief again explain why well it is I think the distribution agreement provides that it is to have the rights of a seller and that their transaction documents that implement that showing that its relationship to speech involves the delivery of in this case there are 35 to 40 disputed or unpaid pallet shipments and the transaction documents in the record show that they are getting some form of ownership to those to those pallets if you will and that's the source of the claim here it is it is it is commerce in perishable commodities that's where it comes from judge judge donald um we so um we think that it was um an error for the court below to sort of seize on the fact if you will that uh that that because speech had shipped the produce that was listed on each of these pallets on these 35 to 40 pallets before um identifying them as pro as produce to produce pay uh immediately before they got the money that that somehow controls the the disposition of this case and we think that um to say that that speech therefore lost title before the receipt of funds and somehow um could not convey anything to produce pay is not consistent with reality it's not consistent with the fairness associated with trust doctrine um and and uh in our view the courts below didn't get proper scope to the fact of the rights uh thank you thank you you'll have your full rebuttal uh mr dugan morning your honors connor doing on behalf of the trustee of speech farms the debtor being a seller supplier is the key that unlocks the door to the pack of trust so i think this case really can be distilled down to the question did produce pay supply or sell produce to speech farms and i think that answer unequivocally no they supplied quite a bit of cash but not one ounce of produce and therefore the bankruptcy court was right to deny their pack-up claim judge boggs talked about the two arguments that uh that produce pay advances i think what i just said kind of goes to the first argument but the second argument in terms of produce pay stepping into the shoes of speech farms uh to use another metaphor is trying to put a square peg into a round hole and let me explain uh if speech farms selling its produce to kroger um that creates one of these packet trusts if kroger then happened to go into bankrupt bankruptcy uh speech farms would have a pack of claim as against kroger and that's the the claim that arguably produce pay is stepping into but it does not create a trust as between produce pay and speech farm we think uh the the cases and the stature are clear that the pack applies to suppliers and sellers and i still haven't seen anything from produce pay that shows how they sold or supplied produce to speech farms the distribution agreements language um does not change anything and that's uh i think the bankruptcy court uh properly went beyond the labels in that distribution argument agreement to see what exactly was happening and and it's undisputed that every single time that speech farms loaded a palette onto uh the the this produce pay uh platform the produce had already been delivered to an end user one of one of its normal customers council let me let me ask you you just used the term end user is there law about what happens if there is some type of middleman that is if speech sells to you know alibaba from chinese uh intermediary and they then sell it to an end user does that intermediary become a pack a seller or supplier well i think that's where the pro or con on that yeah i think that's where the language in the statute or agents involved in the transaction uh would enter in i did not see any case law on that so i i can't say that it's come up frequently uh but i think that if they were if they were truly an agent that is to say i i'm i'm speech and i just hire a lawyer or an accountant to market my goods that would be one thing but if i sell it to a middleman who isn't going to make pies out of it can they become a pack a seller or supplier i would kind of guess not but i'm asking because i'm not familiar with this area of law i think it would depend if they go on then to supply or sell it to another that's what that's what i meant yeah yeah and and all i would say here is that produce pay was actually at the the front of the stream rather than serving in that agency capacity bringing us uh different grocers the grocers that that speech farms was selling to were all its own customers it should be a very different case perhaps if produce pay had been the one going out as a broker and finding the various grocers then they might fall within that language of agents involved in the transaction the question of receivables which i think i've already touched on and i would just touch on it again there if they've bought speech farms receivables that's only giving them a right vis-a-vis one of the grocers that we sold to it doesn't create a trust relationship between produce pay and speech farm so i i if there are no further questions i'd rest on the briefs your honor but uh i think i've both the brief and what i've said here kind of outlines our position well thank you for the time but let me let me press you then just for a second on the points i was raising which was um so you sell to kroger if for whatever reason kroger decided to turn around and sell those blueberries to uh the pie factories would they become a practice seller or supplier just because they decided to sell it further on i mean that that was kind of thrust of my question yeah i missed the thrust of your question judge boggs i apologize i think under the plain language there's a strong argument that they would become a supplier or seller uh in that in that context i i don't think it's not raised here but yeah i think okay statute i i think that the answer would be yes to that question judge tapar any further questions judge boggs mr dugan thank you very much for the gift of time and we'll go back to mr jordan for his rebuttal well um in rebuttal um mr dugan said that um nothing shows a sale um i beg to differ with him i think the transaction documents that i refer to generally um the the if you will there are there are 35 to 40 pieces of paper that are titled confirmation of sale and they're issued by produce pay to speech farms and they are part of the implementation of the distribution agreement you know mr jordan clearly um produce pay was in the in the position of a a financing arrangement i mean they had no product uh to sell they never were in possession of any product or anything like that so so this really was a financing arrangement wasn't it judge donald i think you're right to say that that it could be understood to be um a kind of financing but it's not the kind condemned by paca it's not the kind that the first subsection of paca uh coordinating an ec1 speaks of as a burden on commerce one that that involves a financing that prevents the delivery of funds to an unpaid seller or supplier in fact what it does is it facilitates the delivery of payment because produce pay got the payment to the um seller supplier first and got its rights they got it to the grower if you will and so the farmer in the in the in the perhaps the most fundamental sense of this statute is operating is is um is being helped and that that so you if you're looking at the language of the you can't key off the first section and say well this trust couldn't be intended to operate for somebody that's received an assignment of the seller or supplier's position because it has characteristics that allow the seller to if you will have some form of recourse like a lender would and so uh our view is that they they're still entitled to the protection of the trust because they are facilitating payment to at the most basic sense the grower and uh that's how I would respond to your question your honor and um if there are no further questions and I think thank the court very much for hearing me out well I want to also thank you for the gift of time and uh would say that the the matter has uh been argued and is submitted and we will give you an um